UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRUCE PARKER,

                    Plaintiff,

v.

UNKNOWN PECHTEL et al.,

                    Defendants.

_____/

Case No. 1:23-cv-627

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff

has been granted leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73

of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action

under the jurisdiction of a United States magistrate judge. (ECF No. 8.)

This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial

review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131,

1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a

putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless

notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties

to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal

law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted,

or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2),

1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they

are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying

these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against

Defendants Gouine and Goostrey. The Court will also dismiss, for failure to state a claim,

Plaintiff's Fourteenth Amendment claim for violation of due process and all claims for injunctive

relief against the remaining Defendants. Finally, the Court will deny Plaintiff's motion for a

preliminary injunction (ECF No. 3) and deny Plaintiff's motion to exclude this case from the

Court's early mediation program (ECF No. 9) as moot. Plaintiff's Eighth Amendment claim

against Defendant Pechtel for cruel and unusual punishment, First Amendment claims against

Defendants Trefil, Brock, and Fricke for retaliation, and Fourteenth Amendment claim against

Defendant Pechtel for violation of Plaintiff's right to equal protection will remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which Plaintiff complains, however, occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues Corrections Officer Unknown Pechtel, Corrections Officer Unknown Gouine, Lieutenant Unknown Trefil, Sergeant Unknown Brock, Inspector Unknown Goostrey, and Corrections Officer Unknown Fricke, all in their individual capacities.

Plaintiff is a non-binary prisoner, previously diagnosed as gender dysphoric.[2] (ECF No. 1, PageID.3.) Plaintiff claims that, on January 12, 2023, Plaintiff spoke with an investigator from the Ombudsman's Office, explaining that Plaintiff had been previously subjected to retaliation and discrimination based upon race and gender identity. (*Id.*)

On January 15, 2023, Defendant Pechtel entered Plaintiff's cell and penetrated Plaintiff's anus with his finger. (*Id.*) When Plaintiff asked what Defendant Pechtel was doing, Defendant Pechtel asked whether Plaintiff was gender dysphoric. (*Id.*) Two days later, Defendant Gouine entered Plaintiff's cell and rubbed Plaintiff's back and buttocks to wake Plaintiff up. (*Id.*) Plaintiff filed a complaint with internal affairs and made a written complaint to MDOC Director Heidi Washington. (*Id.*) Plaintiff also reported "being sexually abused" by Defendants Pechtel and Gouine to the MCF mental health department on January 25, 2023. (*Id.*)

On January 26, 2023, while Plaintiff was discussing the actions of Defendants Pechtel and Gouine with non-party Registered Nurse Jones, Defendants Brock and Trefil "burst in the door

---

[2] Plaintiff uses they/them pronouns. (*See* ECF No. 1, PageID.2.)

and threatened to put Plaintiff in solitary confinement for reporting abuse." (*Id.*) Plaintiff was then sent to Defendant Goostrey's office where Plaintiff again discussed the abuse, as well as the threats by Defendants Brock and Trefil. (*Id.*) Defendant Goostrey became angry but told Plaintiff that he would make a referral to the state police. (*Id.*) Plaintiff subsequently spoke with non-party Psychologist Collins about the assaults. (*Id.*, PageID.4.) That evening, Defendant Gouine kissed Plaintiff on the lips while passing out the mail. (*Id.*)

Plaintiff filed a PREA complaint against Defendant Gouine on January 27, 2023, and a written complaint with internal affairs on January 28, 2023. (*Id.*) Plaintiff filed grievances and written complaints regarding the "sexual abuse," the "failure to protect" by Defendant Goostrey and other non-parties, widespread and customary abuse against prisoners based upon gender identity and sexual orientation, and retaliation. (*Id.*, PageID.4–5.)

On February 3, 2023, "[d]uring the exchange of mail, [D]efendant Gouine rubbed [P]laintiff[']s hands." (*Id.*, PageID.5.)

On February 4, 2023, after Plaintiff refused to drop Plaintiff's PREA complaints, Defendant Fricke wrote Plaintiff a Class II misconduct for going into the dayroom while on sanctions even though Defendant Fricke previously gave Plaintiff permission to do so. (*Id.*) Defendant Fricke also told other prisoners that Plaintiff was a "rat" because of Plaintiff's complaint against Defendant Gouine. (*Id.*) These prisoners began to threaten Plaintiff. (*Id.*)

On February 5, 2023, while Defendant Brock was interviewing Plaintiff on the Class II misconduct, Defendant Brock mocked Plaintiff, telling Plaintiff that Plaintiff's PREA complaint was false. (*Id.*) Defendant Trefil also told Plaintiff, "As long as your [sic] here, were [sic] going to fuck you over Parker, so get use [sic] to getting fucked. Oh and your complaints aren't going

anywhere we'll make sure of that." (*Id.*) That day, Plaintiff called the PREA hotline to report the actions of Defendants Brock and Trefil, and the retaliation by Defendant Fricke. (*Id.*)

Plaintiff was transferred from MCF to the Gus Harrison Correctional Facility on February 7, 2023. (*Id.*, PageID.5.)

Plaintiff brings the following § 1983 claims: First Amendment retaliation claims against Defendants Trefil, Brock, and Fricke; Eighth Amendment failure to protect claims against Defendant Goostrey; Eighth Amendment cruel and unusual punishment claims against Defendants Pechtel and Gouine; and Fourteenth Amendment claims for violation of the Due Process Clause and Equal Protection Clause against Defendants Pechtel and Gouine. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Eighth Amendment – Sexual Abuse

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous;" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted).

7

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). Here, Plaintiff alleges that Defendant Pechtel sexually assaulted Plaintiff on January 15, 2023, by touching and penetrating Plaintiff's anus with his finger. (ECF No. 1, PageID.3.) Taken as true, this allegation of sexual assault is sufficiently serious to state an Eighth Amendment claim against Defendant Pechtel.

8

In contrast, Plaintiff's claim against Defendant Gouine does not rise to the level of a constitutional violation. Plaintiff alleges that Defendant Gouine rubbed his hands over Plaintiff's back and buttocks to wake Plaintiff up on January 17, 2023, (*id.*, PageID.3), kissed Plaintiff on January 26, 2023, (*id.*, PageID.4), and rubbed Plaintiff's hands on February 3, 2023, while distributing Plaintiff's mail to Plaintiff. (*id.*, PageID.5). Courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

Under the circumstances alleged by Plaintiff, the incidents described above with Defendant Gouine, while certainly offensive, fall short of the severity necessary to state an Eighth Amendment claim. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Gouine will be dismissed.

### B.      Eighth Amendment – Failure to Protect

Plaintiff also brings an Eighth Amendment claim against Defendant Goostrey, alleging that Defendant Goostrey failed to protect Plaintiff from the actions of Defendants Pechtel and Gouine. Plaintiff claims that on January 26, 2023, Plaintiff told Defendant Goostrey of the prior actions of Defendants Pechtel and Gouine, and that Defendant Goostrey told Plaintiff that he did not like Plaintiff but said that he would make a referral of the Michigan State Police. (ECF No. 1, PageID.3.) That evening, Defendant Gouine kissed Plaintiff and, subsequently, several days later, rubbed Plaintiff's hands. (*Id.*, PageID.4–6.)

In its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Here, Plaintiff fails to allege sufficient facts to demonstrate that Defendant Goostrey failed to protect Plaintiff from an excessive risk to Plaintiff's health or safety. Specifically, Plaintiff alleges that he reported the incidents with Defendants Pechtel and Gouine to Defendant Goostrey

on January 26, 2023; however, Plaintiff does not allege that Defendant Goostrey knew about the issue before January 26, 2023. Therefore, Plaintiff fails to allege any facts to suggest that Defendant Goostrey was aware of any risk of sexual abuse by Defendant Pechtel prior to the January 15, 2023, incident with Pechtel such that it could be said that Defendant Goostrey was deliberately indifferent to the same. Additionally, with respect to the incidents with Defendant Gouine that occurred after Plaintiff reported the prior incidents to Defendant Goostrey, as discussed above, the actions of Defendant Gouine, while wholly inappropriate, do not rise to the level of a constitutional violation. Under these circumstances, Plaintiff has failed to allege sufficient facts to hold Defendant Goostrey liable for Goostrey's failure to protect Plaintiff from the subsequent incidents with Defendant Gouine, none of which rose to the level of an Eighth Amendment violation. Accordingly, for these reasons, the Court will dismiss the Plaintiff's Eighth Amendment claim against Defendant Goostrey.

### C.      First Amendment – Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that Defendants Trefil, Brock, and Fricke each retaliated against Plaintiff, in violation of Plaintiff's First Amendment rights. Plaintiff alleges that Defendants Brock and

Trefil threatened to put Plaintiff in solitary confinement, (ECF No. 1, PageID.3), and that Defendant Fricke issued Plaintiff a false misconduct and told other prisoners that Plaintiff was a rat, (*id.*), all for reporting sexual abuse and inappropriate touching. Taking these factual allegations as true, the Court finds that Plaintiff's First Amendment claims against Defendants Brock, Trefil, and Fricke may not be dismissed on initial review.

> **D.      Fourteenth Amendment – Due Process**

Plaintiff references "due process" in his Fourteenth Amendment claim against Defendants Pechtel and Gouine, but Plaintiff does not elaborate on the basis for Plaintiff's due process claim. (*See* ECF No. 1, PageID.7.)

To the extent that Plaintiff intended to raise a procedural due process claim against Defendants Pechtel and Gouine, Plaintiff fails to state such a claim. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Here, nothing in the complaint suggests that Defendant Pechtel and Gouine deprived Plaintiff of any protected liberty or property interest. Plaintiff therefore fails to state a procedural due process claim against Defendants.

Plaintiff also fails to raise a substantive due process claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). However, "where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a

12

particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the Eighth Amendment applies to protect Plaintiff from cruel and unusual punishment, including sexual abuse. Consequently, any intended substantive due process claim is subject to dismissal.

### E.      Fourteenth Amendment – Equal Protection

Finally, Plaintiff alleges that Defendants Pechtel and Gouine violated Plaintiff's right to equal protection as a non-binary prisoner. (ECF No. 1, PageID.7.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. Where legislation singularly and negatively affects a "quasi-suspect" class such as one defined by gender, the level of scrutiny is "intermediate," and the law is valid if it is "substantially related to a sufficiently important government interest." *Id.* at 440–41. However, a state practice generally will not require strict

13

scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Here, Plaintiff alleges that Plaintiff is a member of a suspect class as a gender non-confirming individual and that Defendants Pechtel and Gouine discriminated against Plaintiff because of that membership. Therefore, to state an equal protection claim, Plaintiff must prove "purposeful or intentional discrimination on the basis of gender." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 568, 576–77 (6th Cir. 2004) (internal citation omitted) (concluding that a city fire department employee stated an equal protection claim premised upon sex discrimination when the employee alleged discrimination against because of the employee's gender non-conforming behavior and appearance); *see also Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012) (noting that an inmate stated a plausible equal protection claim when he alleged that "he was removed from his public-works employment because of the defendants' anti-gay animus"); *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011) (noting that several circuits have held that "discrimination against a transgender individual because of her gender-noncomformity is sex discrimination, whether it's described as being on the basis of sex or gender"); *Rowe v. Corr. Med. Servs., Inc.*, No. 1:08-cv-827, 2010 WL 3779561, at *8 (W.D. Mich. Aug. 18, 2010) (noting that "a transsexual is a protected class under the Equal Protection Clause"), *Report and Recommendation adopted*, 2010 WL 3779437 (W.D. Mich. Sept. 22, 2010); *cf. Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1754 (2020) (holding that an employer violates Title VII by firing an individual "merely for being gay or transgender"). A plaintiff presenting a gender-based equal protection claim "can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas*

14

*Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th

Cir. 2011) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)).

Plaintiff alleges that Plaintiff asked Defendant Pechtel what Pechtel was doing when

Pechtel sexually assaulted Plaintiff on January 15, 2023. (ECF No. 1, PageID.3.) Defendant

Pechtel responded by asking whether Plaintiff was gender dysphoric. (*Id.*) At this stage in the

proceedings, taken as true and in the light most favorable to Plaintiff, this comment is sufficient to

suggest direct evidence of a discriminatory motive or purpose. *See Umani*, 432 F. App'x at 458

("[D]irect evidence of discrimination does not require a fact-finder to draw any inferences in order

to conclude that the challenged ... action was motivated at least in part by prejudice against

members of the protected group." (citation omitted)); *see also Tibbs v. Calvary United Methodist

Church*, 505 F. App'x 508, 512 (6th Cir. 2012) (discussing that "[d]irect evidence is composed of

only the most blatant remarks, whose intent could mean nothing other than to discriminate on the

basis of some impermissible factor" (citation omitted)).

However, the complaint does not any factual allegations that would plausibly suggest that

Defendant Gouine was similarly motivated by a discriminatory animus in touching Plaintiff

inappropriately. The threshold element of any equal protection claim is disparate treatment.

*Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal

protection claim, a plaintiff must adequately plead that the government treated the plaintiff

'disparately as compared to similarly situated persons and that such disparate treatment either

burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical

Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted)). "'Similarly

situated' is a term of art— a comparator . . . must be similar in 'all relevant respects.'" *Paterek v.

Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637,

651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

Plaintiff does not allege any facts constituting direct evidence of discrimination against Defendant Gouine. Plaintiff also fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas*, 411 U.S. 792, because Plaintiff fails to allege that other inmates who were not members of the protected class were treated differently and were similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458. Therefore, the Court will dismiss Plaintiff's equal protection claim against Defendant Gouine.

### F.      Request for Injunctive Relief

Included within Plaintiff's complaint is a request for injunctive relief. Plaintiff asks this Court to issue an injunction enjoining all MDOC officers from entering the cells of gender dysphoric prisoners except under limited circumstances, and to require that the MDOC create a separate prison facility for gender dysphoric prisoners. (ECF No. 1, PageID.7.) As explained below, the Court will dismiss Plaintiff's request for injunctive relief.

First, the entity against which Plaintiff seeks injunctive relief—the MDOC—is not a party to this action. It is generally "forbidden" for courts to enter injunctive relief against non-parties. *See In re Infant Formula Antitrust Litig., MDL 878 v. Abbott Labs.*, 72 F.3d 842, 842–43 (11th Cir. 1995) (discussing that federal court lacks subject matter jurisdiction to issue preliminary or permanent injunction against a non-party); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (5th Cir. 1996) (holding that a district court is not authorized to grant injunctive relief against non-parties, and discussing limited situations where such relief might be available, such as under the All Writs Act, which does not appear to apply to this case); *Additive Control Measurement Sys., Inc., v. Flowdata, Inc.*, 96 F.3d 1390, 1394–96 (Fed. Cir. 1996) (collecting cases in support of and discussing the "general rule that a court may not enter an

16

injunction against a person who has not been made a party to the case before it"). As such, courts should deny requests for preliminary injunctive relief where there is an insufficient connection between the claims underlying the action and any non-parties against whom injunctive relief is sought. *See, e.g.*, *Spencer v. Morgan*, 2016 WL 7232240, at *2 (S.D. Ohio Nov. 21, 2016), *adopted by*, 2016 WL 7210939 (S.D. Ohio Dec. 13, 2016); *Corsetti v. Hackel*, 2012 WL 4955275 (E.D. Mich. Sept. 26, 2012) (denying injunctive relief and holding that plaintiff's recourse was to file a new lawsuit for his new claims), *adopted by* 2012 WL 4953103 (E.D. Mich. Oct. 17, 2012); *Additive Control*, 96 F.3d at 1394-96.

Second, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (internal quotation omitted). Thus, a preliminary injunction should not issue "when it deals with a matter lying wholly outside the issues in the suit." *Corsetti v. Hackel*, 2012 WL 4955275, at *1 (E.D. Mich. Sept. 26, 2012).

Here, Plaintiff requests that that Court require that the MDOC establish a separate facility for gender dysphoric prisoners; however, nothing in Plaintiff's complaint would suggest that the injuries alleged arose from the mixing of gender dysphoric prisoners with the general population. Plaintiff alleges that Plaintiff was threatened by other prisoners after being labeled as a "rat," (ECF No. 1, PageID.5), but does not allege that Plaintiff was harmed by other prisoners because of Plaintiff's gender identity. Any establishment of a separate facility is "a matter lying wholly outside the issues in [this] suit." *Corsetti*, 2012 WL 4955275, at *1.

And third, to the extent that Plaintiff seeks injunctive relief against remaining Defendants Pechtel, Trefil, Brock, and Fricke, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d

17

172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory

relief became moot when the prisoner was transferred from the prison about which he complained);

*Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-

1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991).

Underlying this rule is the premise that such relief is appropriate only where plaintiff can show a

reasonable expectation or demonstrated probability that he is in immediate danger of sustaining

direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S.

95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself,

sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*;

*Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp.

609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S.

488, 495–96 (1974).

Plaintiff is now incarcerated at LMF and, before that, had been transferred from MCF to

the Gus Harrison Correctional Facility. (ECF No. 1, PageID.6.) Plaintiff has not alleged facts that

show that Plaintiff will be subjected to further future conduct by any of the remaining named

Defendants. Instead, Plaintiff's complaint concerns events that allegedly took place from January

15, 2023, until the time of Plaintiff's transfer on February 7, 2023. Therefore, any injunctive relief

against the named Defendants could not be properly characterized as prospective. See *Ladd*, 971

F.3d at 581. Accordingly, for these reasons, the Court will dismiss Plaintiff's request for injunctive

relief.

III.   **Motion for Preliminary Injunction**

In addition to the complaint. Plaintiff has filed a "motion for a[n] emergency preliminary

injunction," asking for the same injunctive relief set forth in the complaint on an "emergency"

basis. (ECF No. 3, PageID.26; ECF No. 4.) For the same reasons that are set forth above, the Court will deny Plaintiff's motion. *See supra* Section II.F.

**IV.      Motion to Exclude Case from Early Mediation Program**

Lastly, Plaintiff requests that the Court exclude this case from the early mediation program. (ECF No. 9, PageID.49.)

Plaintiff's *pro se* action is eligible for the Court's early mediation program. Typically, in a case such as this, the Court would enter an order staying the case and referring it for mediation. That order would explain that, if any party seeks to have this case excluded from the prisoner early mediation program, that party must file a statement to exclude the case from mediation on or before a specified date. Because Plaintiff has prematurely filed a statement to exclude the case, the Court will not enter an order staying the case and will not refer the matter to mediation. Plaintiff's motion will be denied as moot.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Gouine and Goostrey will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment claim for violation of due process and all claims for injunctive relief against the remaining Defendants. Plaintiff's Eighth Amendment claim against Defendant Pechtel for cruel and unusual punishment, First Amendment claims against Defendants Trefil, Brock, and Fricke for retaliation, and Fourteenth Amendment claim against Defendant Pechtel for violation of Plaintiff's right to equal protection remain in the case. The Court will also deny Plaintiff's motion for a preliminary injunction (ECF No. 3) and deny Plaintiff's motion to exclude this case from the Court's early mediation program (ECF No. 9) as moot.

An order consistent with this opinion will be entered.


Dated:   September 5, 2023                            /s/ Ray Kent
                                                      Ray Kent
                                                      United States Magistrate Judge