UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE PARKER,

        Plaintiff,

v.

UNKNOWN PECHTEL, *et al.*,

        Defendants.

Case No. 1:23-cv-627

Hon. ROBERT J. JONKER

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Bruce Parker ("Parker"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). Parker named six defendants in this lawsuit. Four defendants remain: Corrections Officer (CO) Todd Pechtel; Capt. Gary Trefil (named as Lieutenant Unknown Trefil); Lieutenant (Lt.) Jason Brock (named as Sergeant Unknown Brock; and CO Eric Fricke.  This matter is now before the Court on defendants Trefil, Brock and Fricke's motion for summary judgment on the basis of exhaustion (ECF No. 20).

    **I.**    **Parker's allegations**

Parker complains of events which occurred at the MDOC's Muskegon Correctional Facility (MCF).  The Court summarized Parker's claims as relevant to the four remaining defendants follows:

> Plaintiff is a non-binary prisoner, previously diagnosed as gender dysphoric. [FN 2] (ECF No. 1, PageID.3.) Plaintiff claims that, on January 12, 2023, Plaintiff spoke with an investigator from the Ombudsman's Office, explaining that Plaintiff had been previously subjected to retaliation and discrimination based upon race and gender identity. (*Id.*)

1

On January 15, 2023, Defendant Pechtel entered Plaintiff's cell and penetrated Plaintiff's anus with his finger. (*Id.*) When Plaintiff asked what Defendant Pechtel was doing, Defendant Pechtel asked whether Plaintiff was gender dysphoric. (*Id.*) Two days later, Defendant Gouine entered Plaintiff's cell and rubbed Plaintiff's back and buttocks to wake Plaintiff up. (*Id.*) Plaintiff filed a complaint with internal affairs and made a written complaint to MDOC Director Heidi Washington. (*Id.*) Plaintiff also reported "being sexually abused" by Defendants Pechtel and Gouine to the MCF mental health department on January 25, 2023. (*Id.*)

On January 26, 2023, while Plaintiff was discussing the actions of Defendants Pechtel and Gouine with non-party Registered Nurse Jones, Defendants Brock and Trefil "burst in the door and threatened to put Plaintiff in solitary confinement for reporting abuse." (*Id.*) Plaintiff was then sent to Defendant Goostrey's office where Plaintiff again discussed the abuse, as well as the threats by Defendants Brock and Trefil. (*Id.*) [Former] Defendant Goostrey became angry but told Plaintiff that he would make a referral to the state police. (*Id.*) Plaintiff subsequently spoke with non-party Psychologist Collins about the assaults. (*Id.*, PageID.4.) That evening, [former] Defendant Gouine kissed Plaintiff on the lips while passing out the mail. (*Id.*)

Plaintiff filed a PREA complaint against [former] Defendant Gouine on January 27, 2023, and a written complaint with internal affairs on January 28, 2023. (*Id.*) Plaintiff filed grievances and written complaints regarding the "sexual abuse," the "failure to protect" by [former] Defendant Goostrey and other non-parties, widespread and customary abuse against prisoners based upon gender identity and sexual orientation, and retaliation. (*Id.*, PageID.4-5.)

On February 3, 2023, "[d]uring the exchange of mail, [former] [D]efendant Gouine rubbed [P]laintiff[']s hands." (*Id.*, PageID.5.)

On February 4, 2023, after Plaintiff refused to drop Plaintiff's PREA complaints, Defendant Fricke wrote Plaintiff a Class II misconduct for going into the dayroom while on sanctions even though Defendant Fricke previously gave Plaintiff permission to do so. (*Id.*) Defendant Fricke also told other prisoners that Plaintiff was a "rat" because of Plaintiff's complaint against [former] Defendant Gouine. (*Id.*) These prisoners began to threaten Plaintiff. (*Id.*)

On February 5, 2023, while Defendant Brock was interviewing Plaintiff on the Class II misconduct, Defendant Brock mocked Plaintiff, telling Plaintiff that Plaintiff's PREA complaint was false. (*Id.*) Defendant Trefil also told Plaintiff, "As long as your [sic] here, were [sic] going to fuck you over Parker, so get use [sic] to getting fucked. Oh and your complaints aren't going anywhere we'll make sure of that." (*Id.*) That day, Plaintiff called the PREA hotline to report the actions of Defendants Brock and Trefil, and the retaliation by Defendant Fricke. (*Id.*)

2

Plaintiff was transferred from MCF to the Gus Harrison Correctional Facility on February 7, 2023. (*Id*., PageID.5.)

Plaintiff brings the following § 1983 claims: First Amendment retaliation claims against Defendants Trefil, Brock, and Fricke; Eighth Amendment failure to protect claims against [former] Defendant Goostrey; Eighth Amendment cruel and unusual punishment claims against Defendants Pechtel and [former Defendant] Gouine; and Fourteenth Amendment claims for violation of the Due Process Clause and Equal Protection Clause against Defendants Pechtel and [former Defendant] Gouine. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

[FN 2] Plaintiff uses they/them pronouns. (*See* ECF No. 1, PageID.2.)

Opinion (ECF No. 13, PageID.72-74).

On initial screening, the Court dismissed defendants Gouine and Goostrey for failure to state a claim, Parker's Fourteenth Amendment claim for violation of due process, and all claims for injunctive relief. *Id*. at pageID.87. The following claims remain: Parker's Eighth Amendment claim against CO Pechtel for cruel and unusual punishment; Parker's First Amendment claims against Capt. Trefil, Lt. Brock, and CO Fricke for retaliation; and Parker's Fourteenth Amendment claim against CO Pechtel for violation of Parker's right to equal protection. *Id*. *See* Order (ECF No. 14).

## II.    Legal standard

### A.    Summary judgment

Defendants Trefil, Brock and Fricke have moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

3

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Lack of Exhaustion

#### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

4

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response,

5

or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### III.    Discussion

Defendants Trefil, Brock and Fricke point out that Parker did not file any grievances against them. *See* Defendants' Brief (ECF No. 21, PageID.108-110); MDOC Step III Grievance Report (ECF No. 21-3, PageID.131-187). Parker was placed on "modified access" from January 23, 2023 through April 23, 2023, because "You have been utilizing the departmental grievance process in an irresponsible manner and has [sic] submitted grievances that were rejected according to policy." MDOC Modified Access Memorandum (Jan. 23, 2023) (ECF No. 1-1, PageID.22).[1] In a "declaration" filed as a response to defendants' motion, Parker acknowledges that he was on modified access during the relevant time, that he tried to file grievances by sending requests to the MCF Grievance Coordinator ("GC"), but that he did not receive responses or grievance forms. *See* Parker's Declaration (ECF No. 23).

Policy Directive 03.02.130 ¶ MM (eff. March 18, 2019) states that a prisoner on modified access may file grievances as follows:

> While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph J. The Warden, FOA Region Manager, or Manager of the Grievance

---

[1] The Court notes that the MDOC's 55-page Step III Grievance Report shows that Parker filed 220 grievances from January 1, 2017 through September 18, 2023 (PageID.133-187). As discussed, Parker was on modified access during the relevant time period. *See* Policy Directive 03.02.130 ¶ JJ ("A prisoner or parolee who files an excessive number of grievances (three within a 30 calendar day span) that are rejected or the prisoner is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph M, may have access to the grievance process limited by the Warden or FOA Region Manager for an initial period of not more than 90 calendar days.").

6

Section may extend the prisoner's or parolee's modified access status for not more than an additional 30 days for each violation. Notification of such extensions shall be consistent with the requirements set forth in Paragraphs KK and LL.

Policy Directive 03.02.130 ¶ MM.  If a plaintiff on modified access followed the procedure set out in ¶ MM, and the MDOC denied a request for a grievance form, then "that would be the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim, since all possible administrative remedies would have been attempted." *Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446 (6th Cir. 2005).

Here, a question of fact exists as to whether Parker filed requests for grievance forms.  In addition to the statements in his declaration, Parker submitted copies of letters/kites to the "MCF Grievance Coordinator" requesting grievances.  In a letter/kite dated January 26, 2023, Parker stated,

> Please send me a grievance. to file against Sgt. Brock and Lt. Trefil. On this day I was in healthcare reporting sexual abuse and both Sgt. Brock and Lt. Trefil burst in and threatened to place me in segregation if I didn't drop my sexual abuse complaint. Thanks.

PageID.223.  In a letter/kite dated February 4, 2023, Parker stated,

> Please send me a grievance to file against c/o Fricke. On this date c/o Fricke game [sic] me permission to use the jpay machine then threatend [sic] to frame me with a misconduct if I didn't drop my sexual abuse complaints against c/o's Gouine and Pechtel who sexually abused me.  This officer then told other prisoers [sic] I was a rat and made them start targeting me and pressing me for money. Thanks

PageID.224.  In a letter/kite dated February 5, 2023, Parker stated,

> Please send me a grievance to file against Sgt. Brock and Lt. Trefil. On this day I was called to the control center to be reviewed on a false misconduct written by officer Fricke on 2/4/23. During my review Sgt. Brock and Lt. Trefil stated "No one fucked me and that they were going to fuck me over as long as I stayed at MCF["].  I'm afraid the retaliation has reached a [sic] all time high and my stress is causing me to lose weight and sleep. I'm paranoid and always scared. Thank you . . .

7

PageID.225.

In their reply, defendants submitted the affidavit of MCF GC Loretta Barnes, in which Barnes states that there is no record of Parker filing the grievance requests:

> 6. When a prisoner who is on modified access status submits a request for a Step I grievance, the GC reviews the request to see if it conforms to the requirements of MDOC P.D. 03.02.130 and if there are grounds for rejection; if the request does not conform to the requirements of MDOC P.D. 03.02.130 or is subject to rejection, then the GC would deny the prisoner's request for a Step I grievance. The GC does not create or need to create any documents to decide whether to deny a Prisoner's request.
>
> 7. In preparation for this affidavit, I searched the grievance office records for documents relating to Bruce Parker #593090, being on modified access status at MCF. I also reviewed the three kites Parker purportedly sent to the grievance office on or around January 26, February 4, or February 5, 2023, requesting Step I grievance forms. (ECF No. 23-1, PageID.223-225.) The MCF grievance office does not have any records of ever receiving the three kites Parker purportedly sent on or around January 26, February 4, or February 5, 2023, and does not have any records of Parker ever following up about those three kites.

Barnes' Aff. (ECF No. 24-1, PageID.231-232).

A genuine issue of material fact exists as to whether Parker exhausted his administrative remedies by requesting grievance forms pursuant to Policy Directive 03.02.130 ¶ MM. Accordingly, defendants' motion for summary judgment should be denied.

### IV.    Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (ECF No. 20 be **DENIED**.

Dated:  January 20, 2024                              /s/ Ray Kent
                                                     RAY KENT
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).